UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  15-24339-CIV-KING

ANGELA SAMPSON,

    Plaintiff,

vs.

CARNIVAL CORPORATION,

    Defendant.
_____/

**DEFENDANT'S *DAUBERT* CHALLENGES TO PLAINTIFF'S EXPERTS**

The Defendant, CARNIVAL CORPORATION, by and through its undersigned counsel, pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local Rule 7.1 of the Local Rules governing practice in and for the Southern District of Florida, hereby respectfully submits this Motion in Limine to challenge the admissibility of certain experts' opinions that Plaintiff intends to present at trial, and as grounds therefor, states as follows:

1. This is a maritime personal injury action in which Plaintiff alleges she sustained injuries to her lower back, ankle, neck, and left shoulder, on or about October 24, 2014 as a result of a slip and fall on the Lido Deck while sailing as a passenger aboard CARNIVAL's vessel, the *Inspiration*. She alleges that she slipped on a liquid on the deck which caused her fall.

2. In this slip and fall case, Plaintiff disclosed the intent to call two expert witnesses at trial.  Defendant raises its *Daubert* challenges as to the following:

    a.  Plaintiff's orthopedic expert Dr. Behnam Myers, D.O.

    b.  Plaintiff's chiropractic expert Dr. Mark Harrington, D. C.

## MEMORANDUM OF LAW

**I.     THE OPERATIVE *DAUBERT* STANDARD FOR ADMISSIBILITY OF EXPERT OPINION TESTIMONY.**

Rule 702 of the Federal Rules of Evidence requires the district courts to serve as gatekeepers to the admission of scientific testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 113 S. Ct. 2786, 2795, 125 L.Ed.2d 469 (1993).  The district courts maintain this role "'to ensure that speculative, unreliable expert testimony does not reach the jury' under the mantle of reliability that accompanies the appellation 'expert testimony.'" *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005).  As gatekeepers, the courts properly exclude any expert or expert opinion that does not satisfy any one of the following criteria:

> (1) The expert must be qualified to testify competently regarding the matters he intends to address; (2) the methodology used to reach any conclusions must pass the *Daubert* test of reliability; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Fed.R.Evid. 702;  *Quiet Tech. DC-8, Inc v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341-2 (11th Cir. 2003).  The Eleventh Circuit refers to these requirements as the "qualification," "reliability," and "helpfulness" prongs, and although there is inevitably some overlap, they remain distinct concepts that must be individually analyzed. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).  The party offering the expert testimony bears the burden to lay the proper foundation for the expert opinion to be admissible, and admissibility must be shown by a preponderance of the evidence. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

   A.   **The experts must be qualified to render opinions on the specific subject at issue.**

To warrant admissibility, the expert's testimony must be derived from scientific, technical or otherwise specialized knowledge on the specific subject matter at issue, and "the

word 'knowledge' connotes more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590.

    **B.  The opinions must be scientifically valid and reliable.**

When a court considers the reliability of an expert witness, the court must undertake an independent analysis of each step in the logic leading to the expert's conclusions; if the analysis is deemed unreliable at any step, the expert's entire opinion must be excluded. *Hendrix v. Evenflo Co., Inc.*, 255 F.R.D. 568, 578 (N.D. Fla. 2009) *citing McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1245 (11th Cir. 2005). District Courts are charged with the duty to assess "whether the reasoning or methodology underlying the testimony is scientifically valid ..." *Daubert*, 509 U.S. at 592-93. At all times, the court's focus must be on the methodology and principles used by the expert to reach his conclusions, not the conclusions themselves. *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004). Expert testimony must be excluded if the reasoning or methodology underlying the opinion is scientifically invalid, or if the methodology cannot properly be applied to the facts. *Daubert*, 509 U.S. at 592.

The courts determine reliability based on these factors:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.

*Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). Failure to satisfy these criteria demonstrates the theories are speculative and highly unreliable. *Kallas v. Carnival Corp.*, 2009 WL 901507, *6 (S.D. Fla. 2009). Furthermore, an expert opinion is not admissible when the only connection between the conclusion and the existing data is the expert's own *ipse dixit* assertion. *McDowell v. Brown*, 392 F.3d 1283, 1300 (11th Cir. 2004)

(citing *General Electric v. Joyner*, 522 U.S. 136, 146, 118 S. Ct. 512 (1997).

### C.  The opinions must be helpful to the jury.

Federal Rule of Evidence 702 dictates that in order to be admissible, the expert's testimony must assist the fact finder. *Craggs Const. Co. v. Federal Ins. Co.*, 2007 WL 1452927, *1 (M.D. Fla. 2007).  "By doing so, the court ensures that expert witnesses will not testify about lay matters which a jury is capable of understanding and deciding without the expert's help." *Hendrix v. Evenflo Co., Inc.*, 255 F.R.D. 568, 579 (N.D. Fla. 2009).  Otherwise, there is a risk the jury will give the expert testimony undue weight because of its status. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe County*, 402 F.3d 1092, 1111 (11th Cir. 2005).  It is not helpful for the expert to just tell the jury how to decide the case. *See Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990).

### II.  THE OPINIONS OF PLAINTIFF'S MEDICAL EXPERTS MUST BE LIMITED TO THEIR RESPECTIVE AREAS OF EXPERTISE.

#### A. Dr. Harrington is a chiropractor and is not qualified to talk about the reasonableness, relatedness or necessity of Plaintiff's surgical procedure.

Dr. Harrington is a chiropractor. As indicated in his C.V., he has no experience or training as a surgeon. [*See* **Ex. 1**]. Similarly, he has not performed a surgery on any of his patients. Dr. Harrington is a qualified chiropractor, but he is not qualified to opine on a subject outside his area of expertise.

### III.  THE FAILURE TO CONDUCT A DIFFERENTIAL DIAGNOSIS ANALYSIS RENDERS THE DIAGNOSTIC OPINIONS OF PLAINTIFF'S PHYSICIANS UNRELIABLE.

#### A.  The Legal Standard for reliability of a diagnostic opinion.

The appropriate methodology for a medical expert to reach a reliable diagnosis in litigation is the differential diagnosis methodology.  *See Chapman v. P&G Distrib.*, 766 F.3d

1296 (11th Cir. 2014).  A reliable differential diagnosis analysis requires an expert to "compile a comprehensive list of hypotheses that might explain a plaintiff's condition.  *Chapman*, at 1310, citing *Hendrix*, 609 F.3d at 1195.  The expert must provide reasons for rejecting alternative hypotheses using scientific methods and procedures and the elimination of those hypotheses must founded on more than subjective beliefs or unsupported speculation.  *Id.*  An expert's failure to enumerate a comprehensive list and to eliminate the alternatives in a scientific fashion determines the reliability and admissibility of the diagnosis under *Daubert*.  *Id.*   The second step – ruling out potential alternative diagnoses – is crucial to the reliability of the conclusion. *Guinn v. AstraZeneca Pharms. LP*, 602 F.3d 1245 (11th Cir. 2010). Similarly, a physician's opinion based upon experience alone is not sufficiently reliable to pass muster under a *Daubert* challenge. *McDowell v. Brown*, 392 F.3d 1283, 1300-1301 (11th Cir. 2004) (citing *General Electric v. Joyner*, 522 U.S. 136, 146, 118 S. Ct. 512 (1997).

**B.  Dr. Myers failed to conduct a reliable differential diagnosis analysis.**

Dr. Myers never conducted a differential diagnosis analysis before diagnosing Plaintiff with an aggravation of a preexisting medical condition.  His conclusions were based on the Plaintiff's subjective history and the inaccurate referral of the pain management doctor.

**a.  Dr. Myers analysis was based on the Plaintiff's subjective history and not medical evidence.**

At his deposition, Dr. Myers was asked about his conclusion that Plaintiff's symptomology was a result of an aggravation of a preexisting medical condition. Dr. Myers responded that his understanding that Plaintiff's complaints related to her prior medical condition had resolved:

> **Q.  Okay. The notion that the prior lower back problems were resolving, is that something that Ms. Sampson told you?**

> *****
> A.	It's a combination of what the patient told me and what Dr. Davis wrote in his note, stating that, "Discussing the history of her complaints, she states that her quote/unquote sciatica left lower extremity pain began following a fall 10-24-2014, on that last day of a cruise she was on during her son's wedding. She states she apparently slipped on a wet surface that was unmarked and since then has begun suffering from excruciating pain."
> Q.	What are you reading from there, Doctor?
> A.	This is the notes that Dr. Davis provided to me.

[B. Myers Depo., p. 45:1- 45:19, **Exhibit 2**].

Dr. Myers was subsequently questioned about the basis for that conclusion to which he responded "[y]ou would have to ask Dr. Davis [referring pain management doctor] on what he was basing his entry." [B. Myers Depo., p. 46: 6-7]. However, Dr. Myers conceded that his understanding that Plaintiff's symptoms related to an extensive history of a preexisting medical condition that were chronic in nature and symptomatic were based entirely on the information given to him by Dr. Lowell Davis, Plaintiff's pain management doctor that was treating her even before the subject accident. This information was all based on the information provided to Dr. Davis by the Plaintiff that she was symptom free:

> Q.	Sure.  But semantically, I just want to make sure you just read me the passage, "Discussing a history of her complaints, she states that this sciatica left lower extremity pain began following a fall on 10-24-14 on that last day of the cruise." Correct?
> A.	Correct, I read the words that Dr. Davis wrote.
>
> *****
> Q.	Okay. So you'd agree with me, from the words that are on the page, the communication from Dr. Davis is that this is information that Ms. Sampson gave him?
> A.	I agree with you that these are the words that Dr. Davis wrote on that page.

[B. Myers Depo., p. 46:17- 47:11, **Exhibit 2**].

Thus, the entire basis for Dr. Myers conclusion that Plaintiff's symptoms had resolved and that she was symptom free prior to embarking on the subject cruise were based on Plaintiff's statements. Plaintiff or her referring physician Dr. Davis conveniently omit mention of the fact that she presented to Dr. Davis office seeking pain management medical care for her identical symptoms **4 days prior** to sailing on the *Carnival Inspiration.*

On October 16, 2014, 4 days before Plaintiff sailed on the *Carnival Inspiration* and 8 days before the subject incident, she visited Dr. Davis. On the medical records from this date, in the section titled *History of Present Illness* Dr. Davis remarks that Plaintiff:

> who presented to the office today with a **longstanding history of chronic pain** with the **primary focus in the low back**, left buttock and her left extremity . . . In the past few months, she has completed her course of chiropractic [sic] are providing her with a positive response, however, **her symptoms continue**. . . Associated with the pain, **she reports numbness and tingling in the left lower extremity**.

[Medical Records Dr. Davis, **Exhibit 3**]**.**

Thus, as of 4 days before the cruise set sail, Plaintiff was treating for the identical symptoms that she is claiming were the result of an accident that had not yet occurred. In his *Assessment* of the same date, Dr. Davis notes that Plaintiff's "primary complaint of law back, buttock and left extremity pain appears to be mechanical as well as neuropathic in nature. She received some relief with recent therapy, however, *her symptoms continue*. **Id** at 2. Dr. Davis recommended that Plaintiff obtain a lumbar spine MRI which was scheduled for October 27. **Id** at 3. Thus, Plaintiff had already been scheduled for an MRI 8 days before the alleged incident on the cruise. There is no medical justification for ordering an MRI on a patient who is symptom free as the Plaintiff and Dr. Davis led Dr. Myers to believe.

Furthermore, Plaintiff presented to one of her named experts, Dr. Harrington for chiropractic treatment for her lumbar spine on October 8, 2014. Plaintiff reported *severe* pain levels in her lumbar spine with stiffness at that time, rated a **9 of 10**. [Medical Records Dr. Harrington, **Exhibit 4**]. As a result of these troubling reports of pain, Dr. Harrington ordered lumbar x-rays which evidenced "narrowing of the neural foramina at L5/S1". This is the same exact level that Plaintiff had surgically operated by Dr. Myers. Plaintiff actually continues her treatment with Dr. Harrington related to her **lumbar pain on October 9, October 10, October 13, October 15, October 17, and October 18** before she departed on the subject cruise on October 20. Yet Plaintiff will have this Court believe that she was asymptomatic with symptoms that were completely resolved when the alleged incident happened.

After returning from the cruise on October 24, 2014, Plaintiff first presented to an UrgentMed Center on October 25, the day after the conclusion of her cruise. [Medical Records UrgentMed, **Exhibit 5**]. In the section titled History of Present Illness, Plaintiff reports to her treating medical profession that she " was on a cruise ship when she slipped on a wet surface amd now [complains of] pain to her left ankle and lower back. . . **[D]enies previous injury to the aforementioned areas**." Id at 3. Therein lies the inception of the Plaintiff's attempts to conceal information from her physicians. This deception is the genesis of the misinformation relied on by Dr. Myers to conclude that Plaintiff's symptoms from her preexisting and chronic lumbar spine condition had resolved before the cruise.

Furthermore, a perusal of Plaintiff's relevant prior medical history evidences the same symptomology and objective medical findings that are the basis for Dr. Myers decision to operate on the Plaintiff as early as 2012. Plaintiff's radiculopathy lumbar pain, stiffness and radiculopathy appear as early as February 25, 2012. [Medical Records Kaiser Permanente Group,

**Exhibit 6**].  In records from her primary care doctor, Plaintiff presented on February 29, 2012 for a follow up on her lumbar MRI dated February 25, 2012. The diagnosis was radiculopathy with evidence of disk bulging with compression on the left sided foramen. **Id.** Plaintiff was underwent surgery with Dr. Myers for the very same condition 5 years later.

In the operative note for the L5-S1 surgery performed by Dr. Myers on July 7, 2015, he provides insight into the medical need for this procedure. In the section titled *Justification of Procedure and Procedure in Detail*, Dr. Myers further confirms Plaintiff "denied any prior radiculopathy to this accident. . . [s]he states that her lumbar radiculopathy down to the left leg is new since her fall dated October 24, 2014." Hence, the justification for Plaintiff's surgery was the "emergence" of radiculopathy which she attributes to a slip and fall accident on the cruise. This is despite the fact that she had the condition diagnosed in February 2012, and treated extensively for it immediately prior to leaving on the subject cruise on October 20, 2014.

Plaintiff's failure to disclose this information to Dr. Myers is troubling in and of itself. To compound the harm of this critical omission, Dr. Myers testimony reflects that his opinion is based on Plaintiff's less than candid subjective medical history and not any type of cognizable science that can be tested and peer reviewed as required by Daubert. **Dr. Myers failed to perform a differential diagnosis** on Plaintiff's medical condition despite the fact that:

  a. the condition was diagnosed as early as 2012;

  b. Plaintiff sought treatment from a chiropractor for lumbar pain 7 times in the 2 weeks leading to the cruise (from 10/08/14-10/18/14);

  c. was ordered to undergo x-rays on 10/8/14 which evidenced neural compression at L5-S1 which was the basis for her lumbar surgery; and

  d. Plaintiff's visit to a pain management doctor for her severe symptoms 4 days

before she left on the cruise.

Dr. Myers failure to take any of this into account in his conclusions renders his opinion being unreliable under *Daubert* and the Court properly strikes his opinion.

> b. **Dr. Myers did not perform any testing to conduct a differential diagnosis in support of his conclusions as required under the Daubert reliability prong.**

Dr. Myers basis for his opinion that Plaintiff had an aggravation of a preexisting medical condition is an unreliable *Ipse Dixit* statement that fails under *Daubert* analysis. As indicated in the *McDowell v. Brown* decision above, an ipse dixit assertion alone is insufficient to justify an expert's assertions. *McDowell v. Brown*, 392 F.3d 1283, 1300 (11th Cir. 2004) (citing *General Electric v. Joyner*, 522 U.S. 136, 146, 118 S. Ct. 512 (1997).

When questioned about the basis for his opinion that Plaintiff's medical condition was in fact an exacerbation, Dr. Myers was unable to identify any cognizable facts in support of his opinion. Dr. Myers explained that the entirety of his opinion was based on the Plaintiff's reported history and a positive straight leg test:

> **Q.    I'm just talking about exacerbation. Other than her saying it, what other proof, if any, do you rely on for this opinion?**
> **A.    The opinion is based on the fact that she had a prior existing injury, and the fact that her report is that her symptoms got worse after the fall.**
> **Q.    Okay. So it's fully based on her report?**
> **A:    Actually it's based on the information provided as a preexisting condition, and it's based on the information provided by the patient in the history.**
> **Q.    Okay. What about the results of your physical exam, Doctor, enabled you to conclude that there was an exacerbation of the preexisting herniated disc at L5-S1?**
> **A.    She had positive straight leg raise.**
> **Q.    Okay.  Anything else?**
> **A.    That was enough.**

[B. Myers Depo., p. 38:20- 39:17, Exhibit 2].

A straight leg exam will evidence that the Plaintiff's disc is herniatied. However, as Dr. Myers readily conceded, Plaintiff has a "prior history of an L5-S1 disc herniation". [B. Myers Depo., p. 37:22-23 **Exhibit 2**]. Thus, the only examination performed by Dr. Myers to support his conclusion that there was in fact an exacerbation is an examination that will only show what everyone already knew: the Plaintiff had been diagnosed with a disc herniation as of 2012, 2 years prior to the subject cruise.

As Dr. Myers can offer no evidence to support his theory that there was an exacerbation, his opinion must be properly excluded to avoid confusing the jury. Moreover, Dr. Myers fails to perform a differential diagnosis as required of medical professionals under *Chapman. See Chapman v. P&G Distrib.*, 766 F.3d 1296 (11th Cir. 2014). Dr. Myers merely found a conclusion that he liked and would have this Court and the jury, take his *ipse dixit* statements as sufficient evidence and justification for his findings that there was an exacerbation/aggravation of Plaintiff's condition. Eleventh circuit case law is abundantly clear that the Court properly excludes Dr. Myers findings that do not pass muster under a *Daubert* challenge.

**C. Dr. Harrington failed to conduct a differential diagnosis analysis.**

Dr. Harrington ordered x-rays of Plaintiff's lumbar spine which evidenced neural compression at L5-S1, 12 days before Plaintiff disembarked on the cruise. He treated her 7 times severe lumbar pain in the 2 weeks prior to her voyage on the *Carnival Inspiration*. Dr. Harrington did not perform any analysis remotely resembling a differential diagnosis. He merely concludes that "[i]t is more likely than not the slipping incident of October 24, 2014 caused [Plaintiff's] injury and pain in her left shoulder, neck and back." **Exhibit 1**. He also concludes that "there was no other likely cause of her complaints and pain between the date of the incident and the day I evaluated her." **Id.** Shockingly, Dr. Harrington fails to take into account or even

mention the x-rays he ordered on October 8, 2014 and the 7 times Plaintiff visited his office to treat her lumbar pain **on October 8, October 9, October 10, October 13, October 15, October 17, and October 18** into his analysis or conclusion that there was no other likely cause of Plaintiff's pain. Dr. Harrington's failure to include this relevant information into his analysis renders his opinion properly excluded under *Daubert.*

IV.  **THE EXPERT OPINIONS OF PLAINTIFF'S PHYSICIANS ON CAUSATION ARE NOT RELIABLE.**

   A.  **The legal requirements for admitting scientific evidence of causation.**

Plaintiff's medical experts rely exclusively on the chronology of Plaintiff's symptoms as she reported them to conclude the shipboard fall is the underlying cause.  However, it is well established in the Eleventh Circuit that temporal proximity, alone, is not a scientific methodology that satisfies the reliability requirements under *Daubert. See, e.g., Estate of Gilliam v. City of Prattville*, 667 F. Supp.2d 1276, 1296 (M.D. Alab. 2009).  In *Gilliam*, the district court excluded the causation opinion of an expert that was "merely the product of the argument that what happens first must have caused what happened second."  *Gilliam*, at 1296.  The Court's holding is apropos here:

> Simply put, correlation is not causation, and as the Eleventh Circuit has held, the *post hoc ergo propter hoc* fallacy is not reliable enough to be allowed as expert testimony.

*Gilliam*, at 1296, *citing McClain v. Metabolife Int'l Inc.*, 401 F.3d 1233, 1243 (11th Cir. 2005).

More recently, the Eleventh Circuit Court of Appeals affirmed the district courts' exclusion of an expert's causation opinion where no differential etiology methodology was conducted and the expert relied exclusively on a temporal relationship, and the Court explained:

> The methodology employed by [plaintiff's doctors] was unreliable, as it amounted to simple reliance on a temporal relationship.  The doctors concluded that,

> because the [plaintiffs] did not manifest their specific injuries or need for [treatment] until after the event, the [incident] was the cause of those injuries. Such reasoning "is a classic 'post hoc ergo propter hoc' fallacy which 'assumes causation from temporal sequence.'"

*Cooper v. Marten Transport, Ltd.*, 2013 U.S. App. LEXIS 19778 (11th Cir. 2013).  It is called a fallacy because it makes an assumption based on the false inference that a temporal relationship proves a causal relationship. *McClain v. Metabolife Int'l Inc.,* 401 F.3d 1233, 1243 (11th Cir. 2005).  In this Circuit,

> a mere temporal relationship between an event and a patient's disease or symptoms does not allow an expert to place that event on a list of possible causes of the disease or symptoms.  Case studies and clinical experience, used alone and not merely to bolster other evidence are also insufficient to show general causation.

*Hendrix*, at 1197, *citing Rider v. Sandoz Pharms. Corp.*, 295 F.3d 1194, 1202 (11th Cir. 2002).

When a diagnosis is given and the experts seek to opine on the cause of the condition at issue, the experts must conduct the relevant and appropriate methodology – differential etiology. *Hendrix ex rel. G.P. v. Evenflor Co.*, Inc., 609 F.3d 1183, 1195, fn. 5 (11th Cir. 2010). Differential etiology is a medical process of elimination whereby the possible causes of a condition are considered and ruled out one-by-one, leaving only one cause remaining. *Hendrix ex rel. G.P. v. Evenflor Co., Inc.*, 609 F.3d 1183, 1195 (11th Cir. 2010).  A reliable differential etiology analysis is accomplished in two steps:  (1) compiling a comprehensive lists of hypotheses that might explain the set of salient clinical findings under consideration; and (2) the expert must eliminate all causes but one. *Hendrix*, at 1195 (citations omitted).

The second step is crucial.  An expert must provide reasons for rejecting alternative hypotheses using scientific methods and procedures and the elimination of those hypotheses must be founded on more than subjective beliefs or unsupported speculation. *Hendrix*, 609 F.3d

at 1197.  If the expert utterly fails to offer an explanation for why the alternative causes are ruled out, then the expert's testimony is justifiably excluded.  The reliability of the expert's method is judged by the application of the differential etiology approach to the facts of the case and the validity of the expert's particular method of analyzing the data and drawing conclusions therefrom.  *Hendrix*, at 1195.

This legal standard for admissibility is applied even where science has not definitively determined the cause of why an ailment develops:

> Given time, information, and resources, courts may only admit the state of science as it is.  Courts are cautioned not to admit speculation, conjecture, or inference that cannot be supported by sound scientific principles.  'The courtroom is not the place for scientific guesswork, even of the inspired sort.  Law lags science; it does not lead it.'

*Rider v. Sandoz Pharms. Corp.*, 295 F.3d 1194, 1202 (11th Cir. 2002) (quoting *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996)).  As the gatekeepers, the district courts are bound to rigorously scrutinize the reliability of the proffered expert opinions.

**B. Dr. Harrington and Dr. Myers did not provide a reliable, admissible opinion on causation as to her lumbar pain to relate Plaintiff's claims to the incident on the vessel.**

Neither Dr. Myers nor Dr. Harrington conducted any differential etiology analysis before reaching their conclusions that Plaintiff's complaints were causally related to the shipboard fall. While the precedent set forth above rejects a "before and after" comparison to prove causation, neither of Plaintiff's experts bothered to assess Plaintiff's medical conditions and history before the subject cruise.  The fact that Dr. Harrington fails to include relevant information from Plaintiff's medical history into his analysis when he was a treating physician predating this incident borders the absurd. Dr. Myers essentially only conducted an "after" consideration of one event, and did become aware of or rule out any other events that occurred and other injuries

Plaintiff sustained to the body parts at issue from prior to the accident. Dr. Myers's ignorance of Plaintiff's accurate medical history is not scientific or reliable or admissible.

Plaintiff's expert's causation opinions both fail at step one. They refused to identify potential alternative etiologies of Plaintiff's medical conditions by ignoring her medical history. Plaintiff presents no authority to support that it is scientifically reliable to adopt without a litigant's version of medical history without any corroboration or investigation whatsoever. Such tunnel vision is the antithesis of the reliable, appropriate differential etiology analysis. The binding precedent set forth above makes it clear that the fact that the shipboard fall occurred does not prove causation. Their inability or failure to rule out plaintiff's pain symptoms up to 4 days before she departed on the subject cruise render both Dr. Myers and Dr. Harrington's causation opinions unreliable.

WHEREFORE, the Defendant Carnival Corporation respectfully requests this Court enter an Order precluding Plaintiff from presenting the expert opinions as set forth above.

## CERTIFICATE OF CONFERRING WITH COUNSEL

Pursuant to Local Rule 7.1(c) of the Rules governing practice in and for the Southern District of Florida, Defense counsel conferred with counsel for Plaintiff and he confirmed that Plaintiff opposes the relief sought herein.

Dated: October 3, 2016

Respectfully submitted,

 /s/ Raul G. Delgado II
**David J. Horr**
Florida Bar No. 310761
dhorr@admiral-law.com
**Raul G. Delgado, II**
Florida Bar No. 94004
rdelgado@admiral-law.com

CASE NO.:  15-24339-CIV-KING<br>
PAGE 16

        HORR, NOVAK & SKIPP, P.A.
Two Datran Center, Suite 1700
9130 South Dadeland Boulevard
Miami, FL  33156
Telephone: (305) 670-2525
Facsimile: (305) 670-2526
*Attorneys for Defendant, Carnival Corporation*

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on October 3, 2016, we electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  We also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

 /s/ Raul G. Delgado II
**David J. Horr**
Florida Bar No. 310761
dhorr@admiral-law.com
**Raul G. Delgado, II**
Florida Bar No. 94004
rdelgado@admiral-law.com
*Attorneys for Defendant, Carnival Corporation*

/1126157/490

CASE NO.: 15-24339-CIV-KING
PAGE 18

## SERVICE LIST

**Ben Murphey**
Florida Bar No. 25489
**bmurphey@lawlorwinston.com**
Lawlor Winston White & Murphey
2211 Davie Boulevard
Ft. Lauderdale, FL  33312
Telephone: (954) 525-2345
Facsimile:  (954) 587-0892
*Attorneys for Plaintiff, Angela Sampson*

**David J. Horr**
Florida Bar No. 310761
**dhorr@admiral-law.com**
**Raul G. Delgado, II**
Florida Bar No. 94004
**rdelgado@admiral-law.com**
HORR, NOVAK & SKIPP, P.A.
Two Datran Center, Suite 1700
9130 South Dadeland Boulevard
Miami, FL  33156
Telephone: (305) 670-2525
Facsimile: (305) 670-2526
*Attorneys for Defendant, Carnival Corporation*