UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN ADMIRALTY

CASE NO. 15-CV-24339-KING/TORRES

ANGELA SAMPSON,

    Plaintiff,

v.

CARNIVAL CORPORATION,

    Defendant.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S *DAUBERT* MOTION AND REQUEST FOR HEARING (DE 21)**

Plaintiff claims she aggravated her pre-existing back problems when she slipped and fell on a wet deck on Defendant's ship. (DE 6.) Plaintiff reported to Defendant's crew that the fall caused her low back and left ankle pain. (DE 24-2.) Plaintiff treated with Dr. Harrington, her chiropractor, for the low back pain after she returned home from the cruise. Plaintiff later treated with Dr. Myers, her orthopedic spine surgeon, who performed a surgery on her low back to address her pain. Plaintiff intends to have Dr. Harrington and Dr. Myers give expert testimony at trial about injury causation and related matters. Defendant filed a *Daubert* Motion challenging Plaintiff's doctors. (DE 21.)

**I.    THE *DAUBERT* INQUIRY.**

Federal Rule of Evidence 702 governs the admissibility of expert evidence and states:

> If scientific, technical, or specialized knowledge will assist the trier
> of fact to understand the evidence or to determine a fact in issue, a
> witness qualified as an expert by knowledge, skill, experience,
> training or education, may testify thereto in the form of an opinion

> or otherwise, if 1) the testimony us based upon sufficient facts or date, 2) the testimony is the product of reliable principles and methods, and 3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court noted the "liberal thrust" of Rule 702 and the Federal Rules' "general approach of relaxing the traditional barriers to 'opinion' testimony." 509 U.S. 579, 588 (1993). Under *Daubert*, this Court is a "gatekeeper" who ensures expert testimony is reliable and relevant. *Id*. at 597. The gatekeeper's line of inquiry has been referred to as ruling on the "fit" between the science behind the expert's work and the issue to which it relates in the case. *Id*. at 591. The party offering the expert evidence must show the evidence satisfies *Daubert* by a preponderance of the evidence. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005).

*Daubert* does not require an expert's methodology to be flawless. *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). "[A] district court's gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury.'" *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK, Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction o the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 5.

## II.   DR. MYERS' OPINIONS SATSIFY *DAUBERT*.

"A witness may be qualified as an expert by virtue of his or her 'knowledge, skill, experience, training, or education.'" *Quiet Tech.*, 326 F.3d at 1342. Dr. Myers has been an orthopedic surgeon since 2008. (Dr. Myers Dep., p. 3:13-17; Dr. Myers Dep. Ex. 4.) Dr. Myers is a clinical instructor of orthopedic spine surgery at Nova Southeastern University. (Dr. Myers Dep. Ex. 5, p. 6.) Dr. Myers has testified as an expert orthopedic surgeon on many occasions.

2

(Dr. Myers Dep. Ex. 5, p. 7.)  Therefore, Dr. Myers qualifies as an expert in the field of orthopedic surgery.

Dr. Myers' testimony also satisfies the "fit" of *Daubert* because he will testify about the cause and extent of Plaintiff's orthopedic injuries as they relate to the slip and fall in this case. (Dr. Myers Dep. Ex. 5; Dr. Myers Dep., pp. 59:24-63:1.)  Dr. Myers' opinions are that the slip and fall caused a permanent aggravation of Plaintiff's pre-existing back problems, the need for spine surgery, and related medical bills.  (Dr. Myers Dep. Ex. 5; Dr. Myers Dep., pp. 59:24-63:1.)  Dr. Myers based his opinions on:

1. Plaintiff's clinical presentation, complaints, and history;
2. His clinical observations of Plaintiff;
3. His surgical observations of Plaintiff;
4. His medical training;
5. His experience treating patients with orthopedic spine injuries caused by, among other things, slip and falls;
6. His experience making orthopedic spine injury causation determinations for patients injured by, among other things, slip and falls;
7. Medical literature discussing orthopedic spine injuries caused by, among other things, slip and falls;
8. Whether the slip and fall described by Plaintiff Sampson was a plausible cause of her pain and need for treatment following the slip and fall;
9. Whether there was a temporal relationship between Plaintiff's slip and fall and her pain and need for treatment;
10. Whether there were any other possible causes of Plaintiff's pain and need for treatment after her slip and fall;
11. His medical records related to my treatment of Ms. Sampson;
12. Medical records from Deerfield Beach Outpatient Surgical Center;
13. Medical records from Carnival Cruises;
14. Medical records from Permanente Medical Group;
15. Medical records from Shenandoah Chiropractic, Dr. Mark Harrington;
16. Medical records from South Florida Interventional Pain and Wellness Institute, Lowell Davis, D.O.;
17. Medical records from A First Choice Healthcare;
18. Medical records from All-Pro Orthopedics and Sports Medicine, Jesse Z. Shaw, D.O.;
19. Medical records from Urgent Med Adult and Pediatric Urgent Care;
20. Medical records from Radiology Consultants of Hollywood; and
21. Summary of defense medical examiner's opinion from Dr. Amar Rajadhyaksha.

(Dr. Myers Dep. Ex. 5.)

Dr. Myers was able to clinically correlate Plaintiff's post-fall injuries and complaints with the fall after considering her medical history and other possible causes. (Dr. Myers Dep. Ex. 5.) Dr. Myers explained how he considered the mechanical nature of Plaintiff's back pain as part of his assessment. (Dr. Myers Dep., pp. 21:2-22:7.) Dr. Myers noted the results of his physical examination further supported his opinions. (Dr. Myers Dep., pp. 36:1-39:15.) Dr. Myers discussed how Plaintiff's reaction to the post-fall therapeutic blocks (injections) supported his opinions. (Dr. Myers Dep., p. 49:5-10.) The medical records Dr. Myers reviewed on Plaintiff were several inches thick and presented a "Herculean amount of documentation." (Dr. Myers Dep., pp. 51:15, 55:15.)

In short, Dr. Myers performed a thorough review of Plaintiff's medical history, observed her in a clinical setting, observed her spine in the operating room, considered the cause of Plaintiff's pain, and arrived at his opinions like any other orthopedic surgeon would. A comparison of the information and methodology used by Dr. Myers to the Defendant's orthopedic expert, Dr. Rajadhyaksha shows they used the same similar information and method of processing that information, except they arrived at two different opinions. *Compare* (Dr. Myers Dep. & Exs.) *with* (Dr. Rajadhyaksha Exp. Report). Therefore, a preponderance of the evidence shows this Court should deny the Motion.

### III. DR. HARRINGTON'S OPINIONS SATISFY *DAUBERT*.

The usual sequence of events is the expert issues a report, the expert is deposed, and then a *Daubert* motion is filed. *In re Seroquel Prods. Liab. Lit.*, 2009 WL 3806434, at *19 (M.D. Fla. June 18, 2009). In this case, Carnival has challenged Dr. Harrington, Plaintiff's chiropractic doctor, without deposing him. And contrary to the claims in the Motion, Dr. Harrington considered Plaintiff's clinical presentation, her medical history, and his observation of her during

4

his treatment of her before arriving at his opinions.  (Harrington Exp. Report, pp., 1-3.)  Dr. Harrington's Report shows he is qualified to testify as an expert on matters related to chiropractic care.  (Harrington Exp. Report, pp. 1-3.)  The information and methodology Dr. Harrington used to come to his opinions is similar to that used by Dr. Myers and Dr. Rajadhyaksha.  Dr. Harrington's opinions will help the jury answer the questions related to chiropractic care in this case, and thus they provide *Daubert*'s "fit."  Therefore, Dr. Harrington's chiropractic opinions should not be stricken.

**IV.     CONCLUSION.**

Defendant's Motion relies heavily on toxic tort and other cases with exotic questions of causation.  The Motion discusses *Chapman v. Procter & Gamble Distributing, LLC*, 766 F.3d 1296 (11th Cir. 2014).  However, the question in *Campbell* was whether zinc in a calcium-zinc compound in denture cream caused hematological and neurological injuries at certain concentrations.  766 F.3d at 1306-07.  The Motion also cites *Hendrix v. Evenflo Co., Inc.*, 609 F.3d 1183 (11th Cir. 2010).  *Hendrix* presented another complex issue:  whether the design of a child's car seat caused an injury that resulted in autism spectrum disorder.  609 F.3d at 1186-87.

Defendant also cites *Guinn v. AstraZeneca Pharmaceuticals, LP*, 602 F.3d 1245 (11th Cir. 2010).  *Guinn* involved the unsettled complex question of whether the drug Seroquel caused diabetes and weight gain.  602 F.3d at 1250-51.  The Motion relies on *Gilliam v. City of Prattville*, 667 F. Supp. 2d 1276 (M.D. Ala. 2009) but that case is not good law.  *See Gilliam v. City of Prattville*, 639 F.3d 1041 (11th Cir. 2011).  *McClain v. Metabolife Int'l, Inc.,* 401 F.3d 1233 (11th Cir. 2005) is another toxic tort case with a complex causation question that Defendant relies on in the Motion.

5

This is a straightforward case in which Plaintiff claims a slip and fall aggravated her pre-existing back problems. Two of Plaintiff's treating doctors intend to testify about the aggravation and the treatment it required. "That falls tend to cause or aggravate injuries is, of course, common knowledge." *Canterbury v. Spence*, 464 F.2d 772, 796 (D.C. Cir. 1972). There is nothing extraordinary about a doctor stating that a fall aggravated a back injury. *Flowers v. Wal-Mart Stores, Inc.*, 2005 WL 2787101, at *7 (M.D. Ga. Oct. 27, 2005). Defendants may have several point on which to cross examine Plaintiff's doctors, but her doctors' opinions should not be stricken under *Daubert*.

Wherefore, Plaintiff asks this Court to deny Defendant's *Daubert* Motion or if the Court is not inclined to deny the Motion then to hold a *Daubert* hearing.

>LAWLOR WHITE & MURPHEY, LLP
**Counsel for Plaintiff**
2211 Davie Blvd.
Ft. Lauderdale, FL  33312
954-525-2345
954-730-8908 fax
bmurphey@lwmlegal.com
agonzalez@lwmlegal.com

>By: /s/ Ben Murphey, Esq. (25489)

My signature above certifies I served this document by CM/ECF on October 24, 2016 to:

David J. Horr, Esq. (310761)
Raul G. Delgado, II, Esq. (94004)
Horr, Novak & Skipp, P.A.
**Counsel for Defendant**
Two Datran Center, Suite 1700
9130 South Dadeland Blvd.
Miami, FL 33156
305-670-2525
305-672-2526 fax
dhorr@admiral-law.com
rdelgado@admiral-law.com