## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 15-24339-Civ-KING/TORRES

ANGELA SAMPSON,

      Plaintiff,

v.

CARNIVAL CORPORATION,

      Defendant.

_____/

## REPORT AND RECOMMENDATION
## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court upon Carnival Corporation's ("Defendant") Motion for Summary Judgment ("Motion") [D.E. 24] against Angela Sampson ("Plaintiff").[1]  Plaintiff timely filed her Response [D.E. 30] and Defendant replied. [D.E. 43].  Therefore, this Motion is now ripe for  adjudication.  Having reviewed the Motion, Response, Reply, relevant authority, and record evidence submitted in support of or in opposition to the same, Defendant's Motion should be **DENIED**.

### *I. BACKGROUND*

On November 23, 2015, Plaintiff filed a single-count Complaint against Defendant on the basis that Defendant committed negligence while Plaintiff was onboard a cruise ship.  More specifically, Plaintiff alleges that on October 24, 2014, she slipped and fell on the outdoor deck of Defendant's cruise ship and injured her

---

[1]     On November 14, 2016, the Honorable James Lawrence King referred Defendant's Motion to the undersigned Magistrate Judge for disposition.  [D.E. 44].

ankle.  Plaintiff – along with her husband – travelled on a four day cruise onboard the Carnival *Inspiration* departing from Long, Beach California to attend her son's wedding on Catalina Island.  Throughout the trip, Plaintiff stayed in her penthouse suit overlooking the ship's deck and awoke early every morning before daybreak to walk around the ship to take pictures of the sunrise.

On the final day of the cruise, Plaintiff awoke at approximate 5:30 a.m. – shortly before sunrise – and left her penthouse cabin to go to the ship's outdoor deck.  Plaintiff claims she could see crewmembers on the deck but could not determine what they were doing given the lack of light.  Nonetheless, Plaintiff proceeded to walk on the deck particularly because she took a pre-dawn walk every morning and did not experience any prior injuries.  Before Plaintiff's injury, she claims that she never noticed the deck being wet.  After walking 15 to 20 feet from her penthouse suit, Plaintiff claims she slipped and fell, but no crewmembers on deck witnessed it.  She attributed her fall to (1) water on the ship's deck, (2) poor lighting, and (3) a lack of warning cones to alert passengers about any potential safety concerns.  Plaintiff further discovered – after her fall – that the deck was "very wet" because her flip-flops, legs, and shorts were soaked after making contact with the floor of the deck.

Subsequently, Plaintiff returned to her cabin where her husband awoke and took her to the ship's medical center where Plaintiff completed a passenger injury statement.  Approximately 90 minutes later, Plaintiff and her husband returned to the Lido deck and showed security where she fell.  Plaintiff stated that while the

deck was now brighter upon her return, she could see that the entire Lido deck was wet and that there were no caution cones in place to warn passengers. She claims that she saw crewmembers rolling up hoses – which made her assume they had been deep cleaning the deck. However, Plaintiff did not personally see anyone deep cleaning the deck nor did she hear water running on the running on the deck just prior to her claimed fall. Hence, Plaintiff was unaware of whether the crew had been cleaning the deck the prior evening or the morning of her injury.

Prior to and after the fall, Plaintiff did not slip on any part of the vessel again nor did she see anyone else slip on the cruise ship. Plaintiff also contends that despite walking across the deck multiple times during the early mornings prior to her fall, Plaintiff never noticed the deck being wet. Because Defendant was negligent in alerting Plaintiff about the dangerous conditions of the outdoor deck, Plaintiff seeks (1) unspecified damages to be proven at trial, (2) the costs of suit, and (3) prejudgment interest where applicable.

## II.  APPLICABLE PRINCIPLES AND LAW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

3

FED. R. CIV. P. 56(c)(1).  "On summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 (1986) (quoting another source).

In opposing a motion for summary judgment, the nonmoving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial.  *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  The existence of a mere "scintilla" of evidence in support of the nonmovant's position is insufficient; there must be evidence on which the jury could reasonably find for the nonmovant.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  "A court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, or upon which the non-movant relies, are 'implausible.'"  *Mize v. Jefferson City Bd. Of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) (citing *Matsushita*, 475 U.S. at 592–94).

At the summary judgment stage, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.  In making this determination, the Court must decide which issues are material.  A material fact is one that might affect the outcome of the case.  *See id.* at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary

will not be counted."). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### III.   ANALYSIS

#### A.   *General Maritime Law*

"Federal maritime law governs this dispute because (1) the alleged tort occurred on navigable waters, (2) the incident (i.e., injury on a cruise) has the potential to disrupt maritime commerce, and (3) the general activity giving rise to the incident (i.e., transporting passengers on a cruise ship) has a substantial relationship to traditional maritime activity." *Frasca v. NCL (Bahamas), Ltd.*, 2016 WL 3553217, at *2 (11th Cir. June 30, 2016) (citing *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 900 (11th Cir. 2004)).   To prevail on a maritime tort claim for negligence, Plaintiff must allege that "(1) the defendant had a duty to protect the plaintiff from a particular injury[2]; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm.").   "Each element is essential to Plaintiff's negligence claim and Plaintiff cannot rest on the allegations of her complaint in making a sufficient showing on each element for the purposes of defeating summary judgment." *Poole v. Carnival Corp.*, 2015 WL 1566415, at *2 (S.D. Fla. Apr. 8, 2015) (quoting *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1236 (S.D. Fla. 2006).   "The ordinary-

---

[2]      "It is a settled principle of maritime law that a shipowner owes a duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew." *Smith*, 620 F. App'x at 729 (quoting *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 908 (11th Cir. 2004)).

reasonable-care-under-the-circumstances standard we apply, as a prerequisite to imposing liability, requires that the shipowner have had actual or constructive notice of the risk-creating condition" but "federal courts need not even reach the defendant's actual or constructive notice . . . if they determine that the condition was an open and obvious danger." *Smith v. Royal Caribbean Cruises, Ltd.*, 620 F. App'x 727, 729 (11th Cir. 2015) (quoting *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 908 (11th Cir. 2004)).  In light of these general maritime principles, we will discuss the parties' arguments in turn.

### B.    *Open and Obvious*

Defendant's main argument in support of its Motion for summary judgment is that Defendant had no duty to warn Plaintiff of the open and obvious conditions involving a wet outdoor deck during the early morning hours on a ship traveling through the ocean at night.[3]  *See e.g., Lugo v. Carnival Corp.*, 154 F. Supp. 3d 1341, 1345–46 (S.D. Fla. 2015) ("There is no requirement to warn of dangers that are open and obvious" because those "conditions are those that should be obvious by the ordinary use of one's sense.") (citations omitted).  More specifically, Defendant contends that Plaintiff knew she was going outside during the predawn hours on a cruise ship where there was low light and Plaintiff should have expected dewy or misty conditions on the outer deck.  Therefore, Plaintiff's failure to pay attention to

---

[3]    There is no dispute between the parties that under federal maritime law, an operator of a cruise ship has a duty to warn of known dangers that are not open and obvious.  *See, e.g.*, *Isbell*, 462 F. Supp. 2d at 1236;

6

a "dangerous" condition is not Defendant's responsibility since Plaintiff should have allegedly used her ordinary senses to avoid the claimed fall.

As support for this argument, Defendant relies principally on *Smith v. Royal Caribbean Cruises, Ltd.*, where the Eleventh Circuit affirmed a district court's entry of summary judgment on a finding that an alleged dangerous condition was open and obvious. 620 F. App'x 727 (11th Cir. 2015). But, Plaintiff's reliance on *Smith* is misplaced. In *Smith*, a plaintiff hit his forehead on the wall of a pool while attempting to swim laps under water without coming up for air. Upon his arrival at the pool, Smith noticed that the water looked cloudy, green, and murky but Smith entered the pool nonetheless. The district court granted summary judgment in the carrier's favor and on appeal, the Eleventh Circuit affirmed. The Eleventh Circuit reasoned that "the alleged cloudiness of the water, was open and obvious to plaintiff Smith *by his own account*" and that he "recognized 'right away' that he could not see while he was swimming underwater and notice the murkiness of the water *before* even entering the pool." *Id.* at 730 (emphasis added).

Contrary to *Smith*, the circumstances here do not indicate that Plaintiff knew beforehand that the deck was wet. As Defendant concedes in its Motion, Plaintiff testified that she *did not* notice the floor was wet before her fall despite looking down at the floor while walking onto the deck. [D.E. 24 at 3]. Thus, the facts here are materially distinguishable from the facts in *Smith* because the water on the deck was not open and obvious to Plaintiff by her own account. In fact, despite

Plaintiff's alleged due diligence in looking at the floor of the deck, she still slipped and fell.

Defendant next relies on *Luby v. Carnival Cruise Lines, Inc.*, 633 F. Supp. 40 (S.D. Fla. 1986), where the district court granted the defendant's motion for summary judgment on the basis that a ledge behind a shower curtain on a cruise line was an open and obvious condition.  The district court found that it was a "matter of common knowledge that the design of a shower stall necessitates the presence of a ledge" and that plaintiff's familiarity with the shower as a prior customer should have made her familiar "with the fact that showers at sea are equipped with ledges."  *Id*. at 42.  But, Plaintiff's reliance on *Luby* also misses the mark because the case is distinguishable on several grounds. In *Luby*, the shower ledge was so obvious because of the (1) framework of the shower and (2) plaintiff's reoccurring use of the same showers from prior trips on defendant's cruise ships. *See id*. at 41-42 ("Not only is it a matter of common knowledge that the design of a shower stall necessitates the presence of a ledge, but Mrs. Luby has been a passenger on the cruise ship . . . before, and would, or should have been, familiar with the fact that showers at sea are equipped with ledges.") (internal citations omitted).  But, the open and obvious nature of Plaintiff's slip and fall here is not nearly as clear as the circumstances in *Luby* that there was an open and obvious condition.  Accordingly, *Luby* is not as persuasive as Defendant contends.

Defendant also relies on *Lombardi v. NCL (Bahamas) Ltd.*, 2016 WL 1429586 (S.D. Fla. Apr. 12, 2016), where the district court granted summary judgment for

8

the defendant on the basis that a bathroom step was not a dangerous condition. But, Defendant's reliance on this case is misplaced.  In *Lombardi*, a passenger failed to maneuver in a room with the lights off and stumbled over a cabin bathroom step and fell on the bathroom floor.  The court found that the bathroom step "should have been obvious to Plaintiff through the 'ordinary use of her senses'" in part because "she was aware of the step as soon as she entered the cabin" and "[s]he had also taken multiple cruises and found bathrooms always had a step leading into them." *Id*. at *3 (citations omitted).  The plaintiff had also crossed the step several times during her trip before her injury and "could have walked and not ran to the bathroom, used her hands and feet to feel the walls and flooring leading to the bathroom, or simply turned on the cabin lights." *Id*.  Moreover, Plaintiff admit[ted] she was inattentive because of her desire to use the bathroom." *Id*. Because of all these reasons, the court granted summary judgment. But, *Lombardi* – similar to the cases described before– provides a *much* stronger factual basis to support the conclusion that the reason for a plaintiff's injury was because of an open and obvious condition.  To the contrary, the present facts do not persuasively support the contention that (1) Plaintiff was aware of the condensation on the cruise ship deck, or (2) that Plaintiff could have discovered the danger through the use of her ordinary senses.

As for Defendant's remaining cases, they are inapposite for many of the same reasons as described above.  They either involve situations where (1) the facts were so obvious that there was a dangerous situation that no reasonable person could

have thought otherwise, or (2) the plaintiffs were repeatedly aware of the dangerous conditions and disregarded them anyway.  *See, e.g.*, *Salazar v. Norwegian Cruise Line Holdings, Ltd.*, 2016 WL 2961584, at \*3 (S.D. Fla. May 23, 2016) ("'Drawing from the well of human experience leads one to the realization' that liquid may be spilled on a dance floor when that dance floor is populated by intoxicated, dancing cruise ship passengers.  Under these circumstances, spilled liquid on a dance floor is 'open and obvious to any reasonably prudent person through the exercise of common sense and the ordinary use of their eyesight.'") (citations omitted); *Lancaster v. Carnival Corp.*, 85 F. Supp. 3d 1341, 1344–45 (S.D. Fla. 2015) ("Plaintiff exited the elevator to the Corridor and saw that there was a crowd of twenty to twenty-five people in the process of disembarking from the cruise ship.  The fact that a bag of luggage may be lying on the ground amongst a crowd is discernible through common sense and the ordinary use of eyesight.  There is nothing hidden, for purposes of a duty to warn analysis, about a piece of luggage lying in a cruise ship's corridor during passenger debarkation.").

For the reasons articulated above, this action is not comparable to any of Plaintiff's aforementioned cases because the facts presented are distinguishable and there is no indication that condensation on an outdoor deck is open and obvious. Because the Court finds that the outdoor deck was not an open and obvious condition, we will turn to Defendant's second argument relating to whether there was a breach of the duty of care.

C.    ***Breach of the Duty of Care***

"When a passenger claims she is injured by a dangerous condition on the ship, the standard of care 'requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition.' Therefore, generally, in order to prove that a defendant breached its duty of care, a plaintiff must show that: (1) a dangerous condition existed[4] and (2) that defendant had actual notice of the dangerous condition." *Poole v. Carnival Corp.*, 2015 WL 1566415, at *4 (S.D. Fla. Apr. 8, 2015). But, "[w]here a cruise ship operator created the unsafe or foreseeably hazardous condition, a plaintiff need not prove notice in order to show negligence." *Long v. Celebrity Cruises, Inc.,* 982 F. Supp. 2d 1313, 1316 (S.D. Fla. Aug.1, 2013); *see also Groves v. Royal Caribbean Cruises, Ltd.,* No. 09–20800–CIV–TORRES, D.E. 95 at 3, 4 (S.D. Fla. Dec. 8, 2010) (Order on Summ. J.) (stating that the plaintiff need not prove the carrier had notice of a foreseeably dangerous condition of the dining area if the carrier was responsible for its design and layout (citing *Rockey v. Royal Caribbean Cruises, Ltd.,* 2001 WL 420993, at *3 (S.D.Fla. Feb. 20, 2001) (denying summary judgment and holding that plaintiff bringing negligence claim did not have to prove cruise line had notice of dangerous condition where cruise line's own action in improperly locating and storing the bingo board created the hazardous condition); *McDonough v. Celebrity Cruises, Inc.,*

---

[4]    "A dangerous condition is one that is not apparent and obvious to the passenger." *Poole*, 2015 WL 1566415, at *4 (citing *Smolnikar v. Royal Caribbean Cruises, Ltd.,* 787 F.Supp.2d 1308, 1315 (S.D. Fla. 2009). As articulated in the prior section, this element is already satisfied because condensation on an outdoor deck – under the facts presented – is neither apparent nor obvious.

64 F.Supp.2d 259, 264 (S.D.N.Y. Aug. 26, 1999) (denying summary judgment and holding that plaintiff need not prove notice when the shipowner created a foreseeably hazardous situation where passenger was hit by falling coconut drink served by the cruise line).

Here, since Plaintiff alleges that Defendant created the dangerous condition – by failing to inspect and maintain the outdoor deck in a safe way [D.E. 6] – Plaintiff "does not need to prove notice in order to show negligence." *Poole*, 2015 WL 1566415, at *4.  More specifically, Plaintiff's Amended Complaint alleges that Defendant (1) allowed a slipping hazard to exist on the cruise ship deck, (2) failed to properly inspect the floor and remove the hazard, (3) failed to provide a reasonably safe walking surface, (4) failed to warn Plaintiff of the slipping hazard, (5) failed to train and supervise the crew members on Carnival's rules and regulations applicable to floor safety, (6) failed to have enough light on the Lido deck, and (7) engaged in a negligent mode of operation that allowed the foregoing to occur.  [D.E. 6 at 2-3].

As support for her argument, Plaintiff points out the lack of light on the outdoor deck is one example of record evidence – which constitutes a genuine issue of material fact – that Defendant breached its duty of care in failing to maintain a safe outdoor deck.  Specifically, Plaintiff testified that "[i]t wasn't light out, the deck was dark," and that "there was some light, but it wasn't lit."  [D.E. 20 at 126-27].  In response, Defendant claims that Plaintiff merely attempts to create an issue of material fact but that upon closer inspection, one does not exist.  Defendant argues

that "[w]hat Plaintiff misses is that the amount of light on the deck is not at issue because Plaintiff was able to see prior to her [sic] claimed fall."   [D.E. 43]. Defendant references Plaintiff's testimony where Plaintiff indicated that "she could see other persons on the deck and was able to avoid obstacles on the deck." *See id*.

But, Defendant's argument is somewhat misleading and detracts from the fact that Plaintiff purportedly looked at the deck floor before walking on it but could not identify any water given the lack of light – despite noticing the cruise ship's personnel.  There is a noticeable difference between observing condensation[5] on an outdoor deck as opposed to nearby crewmembers.  *See id*.  Nonetheless, Defendant contends that if Plaintiff could see crewmembers that were forty feet away but could not adequately view the wet deck beneath her feet, it was because of her own subjective failure to notice the deck floor.  This argument is unpersuasive because Defendant improperly seeks to equate apples to oranges and compare observations of condensation on an outdoor deck with the recognition of people.[6]  Because the parties – and the record evidence – are in dispute on whether Defendant breached its duty of care and was responsible for creating a dangerous condition that caused

---

[5]    As Defendant concedes in its Reply, "[t]here is no dispute the entire outer deck was wet from morning condensation."  [D.E. 43 at 7].

[6]    Defendant repeatedly argues that there can be no genuine issue of material fact because according to Plaintiff's own testimony, she recognized Defendant's crew members "wearing blue shirts" and that they were approximately forty feet away from her before her fall.  This purportedly demonstrates that Plaintiff had enough light to view the water on the floor of the cruise ship deck.  Nonetheless, this is still a question that is improperly decided on summary judgment given the conflicting record evidence as to whether Defendant created the unsafe environment that caused Plaintiff's fall and subsequent injuries.

Plaintiff's slip and fall, there is a genuine issue of material fact that is best reserved for trial. [7] Accordingly, Defendant's Motion should be **DENIED**.[8]

### IV.   CONCLUSION

For the foregoing reasons, this Court recommends that Defendant's Motion for Summary Judgment [D.E. 24] be **DENIED**:

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of this Report and Recommendation to serve and file written objections, if any, with the District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein.  *R.T.C. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

---

[7]    There is also an issue of material fact with respect to whether the Defendant's warning cones – or lack thereof – is evidence of Defendant breaching its duty of care in failing to maintain a safe outdoor deck.   Defendant claims it put warning cones on the deck before Plaintiff's fall.  But, Plaintiff argues that she did not see any warning cones before her injury and Defendant did not know where the cones were located during the morning of Plaintiff's injury.   Accordingly, this is another factual determination more properly reserved for trial.  Alternatively, the placement of warning cones could also provide sufficient evidence of Defendant being on notice of the dangerous condition – which as mentioned above – is enough to argue that Defendant breached its duty of care.

[8]    The Court notes that Defendant likely has a strong argument at trial to negate liability – or at least shift some liability to Plaintiff's own negligence.  But, because all reasonable inferences are to be drawn in Plaintiff's favor at the summary judgment stage, the Court has no choice but to deny Defendant's Motion so the jury can properly apportion fault.

14

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 7th day of

December, 2016.

/s/ *Edwin G. Torres*

EDWIN G. TORRES
United States Magistrate Judge